**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JASON HOWARD,
*Plaintiff*,

v.

WARDEN DOUGHERTY, *et al*.,
*Defendants*.

No. 3:26-CV-00460 (VAB)

**INITIAL REVIEW ORDER**

Jason Howard ("Plaintiff"), a sentenced inmate currently incarcerated at Brooklyn Correctional Institution ("Brooklyn"),[1] has filed a *pro se* Complaint under 42 U.S.C. § 1983 alleging that twelve prison officials at Corrigan Correctional Center ("Corrigan") violated his rights under the Constitution and state law when he was a pretrial detainee at Corrigan.

For the following reasons, Mr. Howard may pursue his retaliation and harassment claims against correctional officer Olson and his failure to protect claims against Warden Dougherty, Lieutenants Pearson and Bragden, and correctional officers John and Jane Doe.

All other claims against any other Defendants are **DISMISSED**.

## I. FACTUAL BACKGROUND[2]

Mr. Howard allegedly entered Corrigan on May 21, 2024. Compl., ECF No. 1 at 10. Shortly after his arrival, Correctional Officer Olson allegedly began a campaign of harassment against Mr. Howard. *See id.* Olson allegedly hit Mr. Howard in his "private area" while patting

[1] Information on the Department of Correction ("DOC") website shows that Mr. Howard entered the DOC on March 25, 2022, was sentenced on November 6, 2024, and currently resides at Brooklyn DOC, *Inmate Information*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=299390 (last visited June 4, 2026). The Court may may take judicial notice of content on the DOC website. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of content on the DOC's website).

[2] While the Court does not set forth all the facts alleged in Mr. Howard's Complaint, it summarizes Mr. Howard's basic factual allegations here to give context to its ruling below.

him down after meals. *Id.* This allegedly caused Mr. Howard "pain." *Id.* Mr. Howard then allegedly stopped going to meals. *Id.* Once Mr. Howard stopped going to meals, Olson allegedly started coming to Mr. Howard's cell to show her presence and look into Mr. Howard's cell. *Id.*

In mid-June of 2024, Corrigan officers allegedly conducted a unit cell search. *Id.* During this search, Olson allegedly stole electric trimmers and shavers, two stamped envelopes, and all of Mr. Howard's mail from his cell. *Id.* Mr. Howard allegedly told Olson that his personal property was missing. *Id.* Olson allegedly told Mr. Howard, "[Y]ou are beat and there is nothing you can do." *Id.* Mr. Howard allegedly spoke with a lieutenant about this. *Id.*

The lieutenant allegedly ignored Mr. Howard. *Id.* Mr. Howard then allegedly wrote the Warden, a unit manager, a counselor, and Lieutenant Perez of the "A.P. room." *Id.* Lieutenant Perez allegedly responded to Mr. Howard that "he knew nothing." *Id.* Mr. Howard allegedly filed a grievance, which Warden Daughtery allegedly denied. *Id.* Olson allegedly continued to come to Mr. Howard's cell door to "provoke" and "intimidate" Mr. Howard. *Id.*

In early August of 2024, Corrigan officers allegedly conducted another unit cell search. *Id.* at 11. While Mr. Howard was in the hallway during the search, Olson allegedly screamed at Mr. Howard about having his shirt untucked. *Id.* When Mr. Howard accused Olson of earlier stealing personal property from Mr. Howard's cell, Olson allegedly became angry, entered Mr. Howard's cell, and threw out all of Mr. Howard's clothes. *Id.* Olson also allegedly put laundry detergent in Mr. Howard's bowls, drinking water, and food. *Id.* Lieutenant Bragden and correctional officers John and Jane Doe allegedly witnessed Olson's actions but failed to "step in to prevent this retaliation…." *Id.*

As Mr. Howard returned to his cell after the search, an unidentified correctional officer allegedly approached Mr. Howard's cellmate, Holloway, and stated, "[W]e are going to get

Howard[.]" *Id.* Before Mr. Howard entered his cell, Olson, along with a lieutenant, was allegedly "ready to attack" Mr. Howard. *Id.* at 12. Mr. Howard allegedly backed into his cell to avoid confrontation. *Id.* Holloway allegedly attempted to provoke Mr. Howard into fighting the lieutenant, who had pepper spray in his hand. *Id.* Olson allegedly looked through the cell window, and laughed. *Id.*

Later that evening, Olson allegedly returned to Mr. Howard's cell with the lieutenant who had the pepper spray. *Id.* Olson allegedly told Mr. Howard, "[M]y people are going to get you." *Id.* Olson later allegedly wrote the warden, a unit manager, a counselor, and a lieutenant about Olson's "harassment" and "attempted murder." *Id.* Mr. Howard also allegedly spoke with "multiple [lieutenants]." *Id.* These officials allegedly ignored Mr. Howard and "did nothing." *Id.* Mr. Howard then allegedly called the State Police. *Id.* Lieutenant Lane thereafter allegedly came to ask Mr. Howard what happened. *See id.* at 12–13.

When Mr. Howard allegedly returned to his unit after speaking with Lane, "the [B]loods put a $500.00 bounty on [Mr. Howard]." *Id.* at 13. Members of the Bloods gang later allegedly came to Mr. Howard's cell. *Id*. The gang members allegedly told Halloway to open the cell door and that they were going to stab Mr. Howard the following day. *Id.* Halloway then allegedly told Mr. Howard, "[I]f you don't leave[,] we are going to get you tomorrow." *Id.* Mr. Howard allegedly went to segregation later that evening. *Id.* As Mr. Howard entered the segregation unit, an inmate allegedly yelled that the Bloods had put a "bounty" on Mr. Howard and that Olson was trying to kill Mr. Howard. *Id.*

The following day, Mr. Howard allegedly went to Lieutenant Pearson's office. *Id.* Mr. Howard allegedly requested protective custody because his life was in danger by correctional officers and gang members. *Id*. Lt. Pearson allegedly said, "[S]o[,] what?" *Id.* Lt. Pearson

allegedly repeatedly denied Mr. Howard's request to go into protective custody. *Id.* Mr. Howard allegedly told Lt Pearson that he would "go over [his] head." *Id.* Lt. Pearson allegedly told Mr. Howard that he would "put someone in [Mr. Howard's] cell" if he did that. *Id.*

Lt. Pearson then allegedly placed Mr. Howard in a cell with an inmate who had "severe mental health" issues. *Id.* at 14. Lt. Pearson also allegedly released Mr. Howard to recreation with a gang member who had threatened to stab Mr. Howard. *Id.* Lt. Pearson allegedly placed the leader of the Bloods gang in a cell across from Mr. Howard's cell. *Id.* The gang leader allegedly made hand signs to Mr. Howard's cellmate, encouraging the cellmate to attack Mr. Howard. *Id.*

Olson allegedly continued to harass Mr. Howard in segregation by trying to provoke and intimidate him. *Id.* Olson also allegedly came by Mr. Howard's cell, smiled, and laughed at him. *Id.* This allegedly continued for forty-five days, until Mr. Howard was transferred to Brooklyn. *Id.*

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* dismiss a complaint, or any portion of it, that is "frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and … recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III. DISCUSSION

The Court liberally construes Mr. Howard's Complaint to most "strong[ly] … suggest" federal claims for retaliation, intimidation and harassment, failure to protect, failure to intervene, failure to return stolen property, and state law claims for negligence and intentional infliction of emotional distress.[3] *Sykes*, 723 F.3d at 403; Compl., ECF No. 1 at 16–18. Mr. Howard sues Defendants in their official and individual capacities for damages, injunctive relief, and declaratory relief. *See id.* at 3, 9, 19–25.

To seek damages from Defendants in their individual capacities, Mr. Howard must allege facts establishing the personal involvement of each defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983" (internal quotation marks and citation omitted)). "The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Rivera v. Viger*, No. 3:21-cv-00470 (VAB), 2021 WL 3269095, at *3 (D. Conn. July 30, 2021) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). When a defendant is a supervisory official, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609,

---

[3] The Court limits its review under 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to conduct a prompt initial screening to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the Court's determination for purposes of in initial review order under 28 U.S.C § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

620 (2d Cir. 2020). A plaintiff may not sue a defendant for a constitutional violation committed by another defendant solely based on his or her "high position of authority in the prison system." *Wright*, 21 F.3d at 501.

With these principles in mind, the Court considers whether Mr. Howard has sufficiently stated a federal claim for damages against any Defendant in an official capacity, and then will address any such claims brought in their individual capacity.

**A. Claims for Injunctive Relief**

"[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Because Mr. Howard has transferred from Corrigan to Brooklyn, *see supra* note 1, Mr. Howard may not pursue declaratory or injunctive relief against Defendants, all of whom are employed by Corrigan. *See* Compl., ECF No. 1 at 3, 9.

Accordingly, Mr. Howard's claims for declaratory and injunctive relief are dismissed.

To the extent Mr. Howard seeks damages from Defendants in their official capacities, such claims are barred under the Eleventh Amendment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").

Accordingly, Mr. Howard's claims for damages against Defendants in their official capacities are also dismissed.

**A. The First Amendment Retaliation Claims**

To state a First Amendment retaliation claim under section 1983, a plaintiff must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took

adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (citation modified).

Mr. Howard's Complaint suggests that Olson attempted to poison him by putting laundry detergent in Mr. Howard's bowls, drinking water, and food. *See* Compl., ECF No. 1 at 11. An allegation that a correctional officer attempted to poison an inmate is cognizable as a First Amendment retaliation claim. *See Morgan v. Semple*, No. 3:16-CV-225 (VAB), 2020 WL 887749, at *5 n.8 (D. Conn. Feb. 24, 2020) (noting that "[a]llegations of corrections officers contaminating food with boric acid or rat poison have been brought as claims for retaliation under the First Amendment.").

Mr. Howard's grievance against Olson for stealing property from his cell, *see* Compl., ECF No. 1 at 10, is considered protected speech, in satisfaction of the first component. *See Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (noting that "the filing of a lawsuit or a grievance is protected conduct."). Olson's alleged act of putting laundry detergent in Mr. Howard's bowls, drinking water, and food, Compl., ECF No. 1 at 11, constitutes an "adverse action," in satisfaction of the second component. *See Ford v. Palmer*, 539 F. App'x 5, 7 (2d Cir. 2013) (summary order) (allegation that officer "threatened to poison [inmate] in retaliation for the statements [inmate] made" was adverse action). The grievance against Olson and her subsequent actions were sufficiently close in time to infer "a causal connection" between the protected speech and adverse action, in satisfaction of the third component. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding the passage of six months between dismissal of a lawsuit and alleged retaliatory beatings to be sufficient to infer a causal connection).

Accordingly, Mr. Howard may pursue a First Amendment retaliation claim against Olson.[4]

**B. The Fourteenth Amendment Harassment Claims**

"[V]erbal harassment and name-calling, absent 'appreciable injury,' are not constitutional violations cognizable under Section 1983." *Gibson v. Travaglin*, 164 F.3d 617 (2d Cir. 1998) (summary order) (quoting *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986) (per curiam)). But the corollary to this is that harassment may become actionable if accompanied by "appreciable injury," even if the injury is not physical. *See Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (vacating dismissal of harassment claim and instructing district court on remand to "consider whether [plaintiff's] psychological pain and resulting suicide attempt constitute an 'appreciable injury' that makes actionable the various forms of harassment [plaintiff] allegedly suffered." (quoting *Purcell*, 790 F.2d at 265)); *see also Robbs v. DeCapua*, No. 3:25-CV-74 (SVN), 2025 WL 1529317, at *3 (D. Conn. May 29, 2025) (noting that "some courts have held that where verbal harassment caused psychological injury 'as a form of punishment,' that may constitute a violation of the Fourteenth Amendment.").

[4] Mr. Howard also asserts "retaliation" claims against Bragden and John and Jane Doe related to their failure to protect Mr. Howard from Olson or to intervene to stop Olson's actions. *See* Compl., ECF No. 1 at 17. Such claims are more appropriately characterized as failure to protect claims because "[t]he Second Circuit as well as other district courts within the Circuit have observed that it is difficult to establish one defendant's retaliation for complaints against another defendant," *Raynor v. Trumell*, No. 3:24-CV-1270 (KAD), 2025 WL 2625246, at *4 (D. Conn. Sept. 11, 2025) (citation modified), and because the Complaint contains no allegations to suggest that these defendants had knowledge of the grievance Mr. Howard filed against Olson, *see*, *e.g.*, *Jordan v. Dep't of Corr.*, No. 3:24-CV-236 (VAB), 2025 WL 1835955, at *8 (D. Conn. July 3, 2025) (dismissing First Amendment retaliation claim because plaintiff "failed to allege any non-conclusory facts showing that other staff even knew about the grievance filed against [other officers], let alone retaliated against [plaintiff] in response to it."), Mr. Howard has not stated a plausible First Amendment retaliation claim against them. *See Iqbal*, 556 U.S. at 678 (recognizing a claim as facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Accordingly, the Court considers below whether these defendants failed to protect Mr. Howard.

Olson's verbal harassment over several months is not actionable. *See Gibson*, 164 F.3d 617. But Olson's verbal harassment does not stand alone. Mr. Howard alleges that Olson hit Mr. Howard in his "private area" while patting him down after meals, causing him "pain," and prompting him to stop going to meals. Compl., ECF No. 1 at 10. Olson also allegedly stole personal property from Mr. Howard's cell, and, on another occasion, allegedly threw Mr. Howard's clothes out of his cell. *Id.* at 10–11. Additionally, Olson allegedly attempted to poison Mr. Howard's food and water with laundry detergent. *See id.* at 11.

These allegations are sufficient to suggest "psychological injury," *see Ruffino v. Murphy*, No. 3:09-CV-1287 (VLB), 2010 WL 1444562, at *4 (D. Conn. Apr. 12, 2010) (concluding that "defendants' verbal harassment result[ing] in [plainitff's] mental stress, worry, discomfort and emotional harm, and caus[ing] him to fear going to court" was "sufficient to support a claim that [plaintiff] was harassed by the defendants as a form of punishment, in violation of the Fourteenth Amendment."), if not physical injury. When coupled with Olson's verbal harassment, Olson's actions are cognizable Fourteenth Amendment violations. *See Robbs*, 2025 WL 1529317, at *3 (concluding that "[d]efendant's verbal harassment paired with [plaintiff's] allegations that [d]efendant intentionally discarded [plaintiff's] electric wheelchair and had him removed from group are sufficient to state a cognizable section 1983 claim under the Fourteenth Amendment.").

Accordingly, Mr. Howard may pursue his Fourteenth Amendment harassment claim against Olson.

### C. The Fourteenth Amendment Failure to Protect Claim

Prison officials must "take reasonable measures to guarantee the safety of … inmates…." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). This requires prison officials to "protect

prisoners from violence at the hands of other prisoners," *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and citation omitted), and correctional officers. *See Lebron v. Thibodeau*, No. 3:22-CV-804 (OAW), 2023 WL 3057159, at *5 (D. Conn. Apr. 24, 2023) (noting that "[a] correctional officer may incur § 1983 liability by failing to protect an inmate from violence at the hands of a fellow correctional officer." (citing *Blyden v. Mancusi*, 186 F.3d 252, 265 (1999)).

To state a Fourteenth Amendment failure to protect claim, a plaintiff must allege facts satisfying two components, one objective and one subjective. *See id.* The objective component requires a plaintiff to show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[.]" *Id*. Conditions are "sufficiently serious" if they "pos[e] a substantial risk of serious harm" to the inmate. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"A plaintiff may show a substantial risk of harm from a specific assailant, or a more general risk of harm due to the conditions at the time of the attack." *Johnson v. Doe*, No. 3:25-CV-00030 (VAB), 2025 WL 950816, at *3 (D. Conn. Mar. 28, 2025) (citation modified). "A plaintiff need not show he was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* (citation modified). "And a substantial risk of harm can exist for purposes of deliberate indifference, regardless of whether a direct threat or attack actually occurs." *Id.* (citation modified).

The subjective component requires a plaintiff to show that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to

health or safety." *Darnell*, 849 F.3d at 35. "A plaintiff must show something more than mere negligence to establish deliberate indifference in the Fourteenth Amendment context." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (citation modified); *see also Darnell*, 849 F.3d at 36 (stating that the subjective component of a Fourteenth Amendment claim "requires proof …. that an official acted intentionally or recklessly, and not merely negligently.").

Because Mr. Howard was a pretrial detainee and not a convicted prisoner at the time of events in question, *see supra* note 1, the Court analyzes his failure to protect claim under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (stating that "[a] pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment" because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." (citation modified)).

As the objective component, Mr. Howard alleges that, after Olson put laundry detergent in Mr. Howard's bowls, drinking water, and food, and told Mr. Howard, "My people are going to get you," Mr. Howard allegedly wrote the warden, unit manager, counselor, and a lieutenant about Olson's "harassment" and "attempted murder." Compl., ECF No. 1 at 12. And after the Bloods then allegedly put a "bounty" on Mr. Howard, he allegedly requested that Pearson place him in protective custody. *See id.* at 13. These allegations sufficiently suggest "a substantial risk of harm from a specific assailant, or a more general risk of harm ….," *Johnson*, 2025 WL 950816, at *3, in satisfaction of the objective component. *See Morgan v. Dzurenda*, 956 F.3d 84, 90 (2d Cir. 2020) (concluding that "detailed" inmate request forms plaintiff sent to defendants

"explicit[ly]" describing "threat" that specific inmate posed to plaintiff were sufficient to satisfy objective requirement).

As to the subjective component, Mr. Howard alleges that prison officials ignored Mr. Howard and "did nothing" after he wrote them about Olson's "harassment" and "attempted murder." Compl., ECF No. 1 at 12. And Pearson allegedly not only denied Mr. Howard's request to go into protective custody, but placed Mr. Howard among certain Bloods who encouraged Mr. Howard's cellmate to attack him. *See id.* at 13–14. These allegations sufficiently suggest that prison officials, at minimum, "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety," *Darnell*, 849 F.3d at 35, in satisfaction of the subjective component. *See Morgan*, 956 F.3d at 90 (subjective requirement satisfied when defendants "made dismissive remarks" to plaintiff and "ignored [his] requests for help."). Because Mr. Howard's allegations satisfy both components, his Fourteenth Amendment failure to protect claim may proceed.

But this claim may not proceed against all Defendants. Mr. Howard alleges that he wrote "the warden, unit manager, counselor, and [a] [lieutenant]" about Olson's "harassment" and "attempted murder," Compl., ECF No. 1 at 12, but he does not identify those parties by name in the Complaint. *See id.* The Court infers that "the warden" was Warden Dougherty, the only warden listed as a defendant. *See id.* at 3, 9. But this list of defendants does not describe a "unit manager" or "counselor." *Id.* at 12; *see also id.* at 3, 9. And while the list of Defendants identifies three different lieutenants, *see id.* at 3, 9, the Court cannot discern which of these lieutenants received notice of a threat to Mr. Howard's safety.

Moreover, other than writing to Warden Dougherty, there is nothing in the Complaint to sufficiently justify a claim against him. *See Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

Accordingly, this claim may only proceed against Lieutenant Pearson, the only Defendant who can readily identify as being "personally involved" in this alleged violation.[5]

**D. The Fourteenth Amendment Failure to Intervene Claims**

"Failure to intervene" and "failure to protect" are "distinct" claims requiring "separate[]" analyses. *Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 405 n.35 (E.D.N.Y. 2023). Both claims "require a showing that an official acted with deliberate indifference to a substantial risk of serious harm to an inmate or detainee." *Rodriguez v. Yagusic*, No. 9:25-CV-1606 (BKS/MJK), 2026 WL 475411, at *2 n.1 (N.D.N.Y. Feb. 19, 2026) (citation modified); *see also Darnell*, 849 F.3d at 33 n.9 (noting that "deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment."). But a failure to intervene claim "is more appropriate where defendant officers are alleged to have failed to protect a plaintiff from an ongoing attack, either by another officer or an inmate," whereas a failure to protect claim "typically involves allegations that defendant officers had reason to know a plaintiff was at severe risk of serious harm (typically from other inmates), and yet, did nothing to prevent the future harm." *Rodriguez*, 2026 WL 475411, at *2 n.1 (citation modified).

---

[5] Mr. Howard also alleges in the "Claims for Relief" section of his Complaint that Deputy Warden Perez, Captain Jusseaume, and ticket officer Garcia ignored Mr. Howard's requests to be placed into protective custody. Compl., ECF No. 1 at 16. But Mr. Howard does not describe writing these defendants about his safety concerns or otherwise informing them that he would like to be placed into protective custody. *See id.* at 12. Because the Court "can only discern the personal involvement of the defendants whose conduct is described in the body of complaint or the exhibits attached to it[,]" *Bibiloni v. Heather,* No. 3:25-CV-00137 (SFR), 2025 WL 3677011, at *4 (D. Conn. Dec. 18, 2025), the Court cannot consider Perez, Jusseaume, or Garcia personally involved in a failure to protect claim absent any allegations that they knew Mr. Howard's safety was at risk.

Here, Mr. Howard does not allege that officers "failed to protect a plaintiff from an ongoing attack[.]" *Id.* Instead, he alleges that officers stood by and did nothing to prevent Olson from allegedly putting laundry detergent in Mr. Howard's bowls, drinking water, and food. Compl., ECF No. 1 at 11. Because this allegation suggests that "officers had reason to know a plaintiff was at severe risk of serious harm …, and yet, did nothing to prevent the future harm," *Rodriguez*, 2026 WL 475411, at *2 n.1, Mr. Howard's failure to intervene claim based on Olson's actions should be characterized as a failure to protect claim and analyzed under the standard set forth above.

Mr. Howard's allegations that Olson put laundry detergent in Mr. Howard's bowls, drinking water, and food, Compl., ECF No. 1 at 11, sufficiently suggest that Olson posed a "substantial risk of harm" to Mr. Howard, in satisfaction of the objective component. *See Rodriguez v. Schneider*, No. 95 CIV. 4083 (RPP), 1999 WL 459813, at *29 (S.D.N.Y. June 29, 1999), *aff'd*, 56 F. App'x 27 (2d Cir. 2003) (concluding that "[c]ertainly the presence of glass in one's food presents a 'substantial risk of serious harm[.]'"). Mr. Howard's allegations that Bragden and correctional officers John and Jane Doe stood by and did nothing to prevent Olson's actions, Compl., ECF No. 1 at 11, sufficiently suggest that these defendants "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety," *Darnell*, 849 F.3d at 35, in satisfication of the subjective component. *See Cosby v. Bucior*, No. 3:21-CV-1491 (KAD), 2021 WL 5599421, at *3 (D. Conn. Nov. 30, 2021) (subjective component satisfied where officer "merely smiled and watched" as inmate assaulted plaintiff).

Accordingly, Mr. Howard may also pursue a Fourteenth Amendment failure to protect claim against Bragden and Jane and John Doe.

**E. The Fourteenth Amendment Failure to Return Stolen Property Claims**

The Fourteenth Amendment's "Due Process Clause protects against the deprivation of a protected property interest." *Ramos v. Malloy*, No. 3:18-CV-615 (VAB), 2018 WL 1936144, at *3 (D. Conn. Apr. 24, 2018). "Due process generally requires that a state afford individuals 'some kind of hearing' prior to depriving them of a liberty or property interest." *Galdamez v. Taylor*, 329 F. App'x 300, 301 (2d Cir. 2009) (summary order) (quoting *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir. 2003)). But even "intentional destruction of property by state officials during random searches of prison cells is not actionable under § 1983 if a 'meaningful postdeprivation remedy for the loss is available.'" *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 533 (1984)). Thus, there can be "no due process claim for failure to return seized property where adequate post-deprivation remedies are available." *Gonzalez-Blanco v. Police Dep't of Greenburgh*, No. 13-CV-8708 NSR, 2015 WL 3490738, at *3 (S.D.N.Y. June 1, 2015).

"Connecticut provides inmates with a remedy for lost or destroyed property: a prisoner can file a claim with the Board, and, if it is denied, subsequently file a claim with the Office of the Connecticut Claims Commissioner…, which may order relief or authorize suit." *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (citing Conn. Dep't Corr. Admin Directive 9.6(16)(B); Conn. Gen. Stat. § 4-142). This remedy is "adequate" for "Connecticut prisoners who seek compensation for lost or destroyed property." *Crenshaw v. Ross*, No. 25-CV-479 (SFR), 2025 WL 3514682, at *7 (D. Conn. Dec. 8, 2025).

Accordingly, because "adequate post-deprivation remedies are available," *Gonzalez-Blanco*, 2015 WL 3490738, at *3, Mr. Howard's Fourteenth Amendment deprivation

of property claim must be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. 1915A(b)(1); *see also Crenshaw*, 2025 WL 3514682, at *7 (dismissing Fourteenth Amendment claim alleging that correctional officer destroyed plaintiff's property because "the State of Connecticut provides adequate remedies[.]").

**ORDERS**

The Court will permit Mr. Howard to pursue his retaliation and harassment claims against Correctional Officer Olson in her individual capacity, as well as the failure to protect claims against Lieutenant Pearson, and the failure to intervene claims against Lieutenant Bragden, and Correctional Officers John and Jane Doe in their individual capacities.

All other claims against any other Defendant are **DISMISSED**.[6]

The Court enters the following orders:

**(1) The Clerk of Court shall** verify the current work address of Warden Dougherty, Lieutenants Pearson and Bragden, and correctional officer Olson with the Department of Correction Legal Affairs Unit. The Clerk of Court shall mail a copy of the Complaint, this Order, and a waiver of service of process request packet to Dougherty, Pearson, Bragden, and Olson at their confirmed addresses by **December 4, 2026**. By **December 18, 2026,** the Clerk of Court shall report to the Court on the status of the requests. If Pearson, Bragden, or Olson fail to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals

[6] This includes a claim against Calderon and Dougherty alleging that these Defendants failed to provide Mr. Howard with a "prepaid copy of [an] incident report." Compl., ECF No. 1 at 18. To the extent inmates have any property interest in a prepaid copy of an incident report, the Court construes this allegation as a deprivation of property claim, addressed above. Because an adequate state law remedy exists for addressing such a property deprivation, this claim must be dismissed. *See Crenshaw*, 2025 WL 3514682, at *7. Moreover, any other claims against Calderson arising from events that took place before Olson's alleged harassment of him, *see* Compl., ECF No. 1 at 15, must be severed and dismissed without prejudice because they are unrelated to the other claims in the Complaint. *See* Fed. R. Civ. P. 20, 21; *Jordan v. Dep't of Corr.*, No. 3:24-CV-298 (VAB), 2024 WL 2801705, at *5 (D. Conn. May 31, 2024) (severing and dismissing without prejudice unrelated claims (citing *Jusino v. Quiros*, No. 3:21-CV-620 (SRU), 2021 WL 5111908, at *4 (D. Conn. Nov. 3, 2021) (severing count based on events that were unrelated to events underlying other counts of the complaint))).

Service and these Defendants shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(2)** The Court cannot serve Correctional Officers John and Jane Doe without their full names and services addresses. Accordingly, Mr. Howard must file a notice containing the full names and current work addresses of the Doe defendants by **December 18, 2026**. Failure to do so will result in the dismissal of claims against these Defendants without prejudice.

**(3) The Clerk of Court shall** send Mr. Howard a copy of this Order.

**(4) The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

**(5)** Dougherty, Pearson, Bragden, and Olson shall file their responses to the Complaint, either an Answer or a motion to dismiss, by **April 23, 2027**. If these Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. These Defendants also may include all additional defenses permitted by the Federal Rules.

**(6)** Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **August 27, 2027**. Discovery requests need not be filed with the court.

**(7)** All motions for summary judgment shall be filed by **October 1, 2027**.

**(8)** Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

**(9)** If Mr. Howard changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mr. Howard must give notice of a new address even if he is incarcerated.

Mr. Howard should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Howard has more than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Howard should also notify Dougherty, Pearson, Bragden, and Olson or the attorney for these defendants of his new address.

**(10)** Mr. Howard shall utilize the Prisoner E-filing Program when filing documents with the court. Mr. Howard is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Dougherty, Pearson, Bragden, and Olson's counsel by regular mail.

**(11)** The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Mr. Howard.

**SO ORDERED** at New Haven, Connecticut, this 13th day of November, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE